IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN S. STOWE, )
)
          Plaintiff, )
)
v. ) 1:18CV121
)
ANDREW SAUL, )
Commissioner of Social Security,[1] )
)
          Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff John Stowe ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    PROCEDURAL HISTORY

Plaintiff protectively filed his application for DIB on January 21, 2014, alleging a disability onset date of December 31, 2012. (Tr. at 12, 187-93.)[2] His claim was denied initially (Tr. at 88-107, 127-30), and that determination was upheld on reconsideration (Tr. at 108-26,

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #7].

133-36). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 137-38.) Plaintiff attended the subsequent hearing on January 26, 2017, along with his non-attorney representative and an impartial vocational expert. (Tr. at 12.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 25.) On December 22, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since December 31, 2012, his amended alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> post-traumatic stress disorder (PTSD); depressive disorder; anxiety; lumbar degenerative disc disease; arthritis; and diabetes[.]

(Tr. at 14.) The ALJ found at step three that none of these impairments, either individually or in combination, met or equaled any disability listing. (Tr. at 15-16.) Therefore, the ALJ

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

assessed Plaintiff's RFC and determined that he could perform medium work with the following additional limitations:

> He is limited to no more than frequent stooping, balancing, kneeling, crouching, and crawling; occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional reaching overhead; simple, routine, and repetitive tasks; can maintain attention and concentration for two hour segments but not longer; he is limited to work at a non-production pace with occasional contact with the public; not more than frequent contact with coworkers and supervisors but no work involving shared tasks; and work in a stable work setting (no changes in the location of the worksite and only occasional changes in the work station).

(Tr. at 16-17.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff's past relevant work exceeded his RFC. (Tr. at 24.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in the national economy. (Tr. at 24-25.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 25.)

Plaintiff now raises three challenges to the ALJ's decision. With respect to the ALJ's RFC assessment, Plaintiff contends that the ALJ both (1) failed to properly weigh the Veterans Administration's ("VA") Disability Rating, and (2) failed to explain how he determined that Plaintiff is able to maintain attention and concentration for two-hour segments. (Pl.'s Br. [Doc. #10] at 14, 23.) Plaintiff further argues that, at step five of the sequential analysis, the ALJ failed to resolve apparent conflicts between the vocational expert testimony and the <u>Dictionary of Occupational Titles</u> ("DOT"). (<u>Id.</u> at 18.) After careful consideration, the Court agrees that substantial evidence fails to support the ALJ's determination at step five and that remand is

6

required. Given that determination, the Court need not address the additional issues raised by Plaintiff.

In challenging the ALJ's reliance on the vocational expert's testimony at step five of the sequential analysis, Plaintiff contends that the vocational expert's testimony conflicted with the DOT, but that the ALJ failed to obtain a reasonable explanation for the conflict. In Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit clarified the steps an ALJ must take to identify and resolve apparent conflicts between a vocational expert's testimony and the DOT. Specifically, the Fourth Circuit held that, if an expert's testimony apparently conflicts with the DOT, the expert's testimony can only provide substantial evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. Pearson, 810 F.3d at 209-10; see also Rholetter v. Colvin, 639 F. App'x 935, 938 (4th Cir. 2016).

In the instant case, Plaintiff contends that the vocational testimony on which the ALJ relied at step five of the sequential analysis conflicted with the DOT as to all of the identified jobs. Specifically, the ALJ identified three representative jobs available in the national economy that Plaintiff could perform: Campground Attendant (329.683-010), Laundry Worker II (361.685-018), and Porter, Used-Car Lot (915.687-022). (Tr. at 25.) Plaintiff correctly notes that the jobs of Porter and Laundry Worker require constant and frequent reaching, respectively, thereby conflicting with the ALJ's finding that Plaintiff could perform no more than occasional overhead reaching. (Pl.'s Br. at 17.) The DOT does not directly address overhead reaching, but instead addresses only general reaching requirements for each

job. The ALJ asked the vocational expert generally whether her "testimony [was] consistent with the DOT and [its] companion publications," but Defendant concedes that the ALJ never questioned the expert, in accordance with Pearson, for explanation regarding the apparent conflict between occasional overhead reaching and the reaching required to perform the jobs of Laundry Worker and Porter, as reflected in the DOT. Defendant therefore concedes that the ALJ erred as to these two jobs. (Def.'s Br. [Doc. #12] at 16.)

However, Defendant contends that "this error is harmless as one job identified by the vocational expert, that of a campground attendant, remains." (Def.'s Br. at 16.) Plaintiff counters that the job of Campground Attendant apparently conflicts with his limitations to (1) simple, routine, repetitive tasks and (2) work in a stable work setting with no changes in the location of the workplace and only occasional changes in the work station. (Pl.'s Br. at 18.) In particular, Plaintiff cites the extremely varied duties set out in the DOT description of a Campground Attendant as evidence that such a job would, by definition, require changes in work station in excess of his RFC. In pertinent part, a Campground Attendant

> [p]erforms general maintenance on facilities and grounds at recreational camp or park: Operates riding lawn mower to mow grass. Checks buildings and furnishings, repairs minor damage, using handtools, and reports major repair needs to DIRECTOR, CAMP (social ser.). Replaces light bulbs. Carries and places supplies in storage areas. Cleans swimming pool, using vacuum cleaner and scrub brushes. Measures and pours chemicals into pool water to maintain chemical balance. Performs minor repairs to dock, and keeps lakefront swimming area clean and free from hazards. Drives truck to pick up trash and garbage for delivery to central area.

DICOT 329.683-010, 1991 WL 672797. In short, it appears that a Campground Attendant could be required to perform job duties at some combination of at least half a dozen different work stations, including a lake, a pool, a dock, a field(s), one or more buildings, and a truck.

8

While it is certainly possible that changes between these stations may be "occasional" during the course of any given workday, defined as "occurring from very little up to one-third of the time," SSR 83-10, 1983 WL 31251, at *5, neither the vocational expert nor the ALJ directly addressed this issue.[5]

Ultimately, the Court need not resolve whether this creates an apparent unresolved conflict between the testimony and the DOT, because a further review of the requirements for a Campground Attendant reveals that the job also involves occasional climbing. This requirement appears to be in conflict with Plaintiff's RFC restriction to "no climbing of ladders, ropes, or scaffolds." (See Tr. at 16); DICOT 329.683-010, 1991 WL 672797. As with the reaching requirements discussed above, the DOT identifies climbing as a single activity. It does not distinguish between climbing ramps and stairs, which Plaintiff can do occasionally, and climbing ladders, ropes, or scaffolds, which he cannot do at all. Moreover, the ALJ never questioned the expert at all, let alone in accordance with Pearson, regarding this apparent conflict. Accordingly, the Court finds that substantial evidence fails to support the ALJ's determination at step five of the sequential analysis.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner

---

[5] The ALJ asked the expert, in general, whether her testimony was consistent with the DOT, and the vocational expert answered as follows:
> Well, the DOT doesn't deal with some of these work-related functions such as being off task, particularly concentration specifically. Team work or—or sharing or changes in the work stations and the like. Specifically the direction with others whether it's the public or coworkers and supervisors, whether it's a non-production pace. Those are—I believe those are the—I believe those are the ones that—I've used my own observation on training, my experience and researched many of those questions.

(Tr. at 67.) Despite this rather unclear response, the ALJ asked no further questions of the vocational expert.

under sentence four of 42 U.S.C. § 405(g).  Defendant's Motion for Judgment on the Pleadings [Doc. #11] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #9] should be GRANTED to the extent set out herein.  However, to the extent Plaintiff seeks an immediate award of benefits, that request should be denied.

This, the 26th day of August, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge